UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA PENA,<br><br>                              Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security<br><br>                              Defendant. | Case No.:  3:17-cv-01822-AJB-KSC<br><br><br>**REPORT AND RECOMMENDATION RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 14, 17]** |

Pursuant to Title 42, United States Code, Section 405(g), of the Social Security Act ("SSA"), plaintiff filed a Complaint to obtain judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits.[1] Pursuant to Title 28, United States Code, Section 636(b)(1)(B), and Civil Local Rules 72.1(c)(1)(c) and 72.2(a), this matter was assigned to the undersigned Magistrate Judge for a Report and Recommendation.

---

[1] Title 42, United States Code, Section 405(g), provides as follows: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party … may obtain a review of such decision by a civil action … brought in the district court of the United States … The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive."

1

Presently before the Court are: (1) defendant's Motion for Summary Judgment and Opposition to plaintiff's Motion for Summary Judgment [Doc. No. 14]; (2) plaintiff's Motion for Summary Judgment [Doc. No. 17]; (3) plaintiff's reply to defendant's Opposition to plaintiff's Motion for Summary Judgment [Doc. No. 19]; and (4) the Administrative Record [Doc. No. 10]. After careful consideration of the moving and opposing papers, as well as the Administrative Record and the applicable law, this Court **RECOMMENDS** that defendant's Motion be **GRANTED** and plaintiff's Motion be **DENIED.**

## I.    BACKGROUND AND PROCEDURAL HISTORY

On July 22, 2015, plaintiff filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), alleging disability beginning July 1, 2012. [Certified Administrative Record, at pp. 179-88 ("AR")]. On February 23, 2016, the Commissioner denied plaintiff's application. [AR 111-14]. On May 13, 2016, upon reconsider, the Commissioner again denied plaintiff's application. [AR 120-24].

On July 5, 2016, plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ"). [AR 125-27]. On February 1, 2017, plaintiff received notice of the hearing. [AR 143]. A hearing before an ALJ was held on April 24, 2017. [AR 39]. At the hearing, plaintiff amended the alleged onset date of disability from June 1, 2012 to July 22, 2015. [AR 19].

On May 2, 2017, the ALJ issued a written opinion concluding that plaintiff did not qualify for SSI under the SSA. [AR 19-29]. In reaching this decision, the ALJ found that the plaintiff has severe impairments of "history of breast cancer; metabolic syndrome with CAD; overweight/obesity; atypical chest pain; uterine tumor; neuropathy; and degenerative joint disease." [AR 21]. However, the ALJ concluded that she did not have an impairment, or combination of impairments, that meet SSA disability criteria, and that she possesses the residual functional capacity to perform light work with six additional limitations. [AR 22-23].

Plaintiff sought review from the Appeals Council, which was denied on July 18, 2017 [AR 1-5], after which she filed the instant action on September 8, 2017. [Doc. No. 1].

## II.    STANDARDS OF REVIEW

The final decision of the Commissioner must be affirmed if it is supported by substantial evidence and if the Commissioner has applied the correct legal standards. *Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); 42 U.S.C § 405(g). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. [*Id.*]. If there is evidence in the record to support more than one rational interpretation, the District Court must defer to the Commissioner's decision. [*Id.*]. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The Court must weigh both the evidence that supports and detracts from the administrative ruling. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment motions, as defined by [Rule 56], contemplate the use of evidentiary material in the form of affidavits, depositions, answers to interrogatories, and admissions. In Social Security appeals, however, the Court may 'look no further than the pleadings and the transcript of the record before the agency,' and may not admit additional evidence." *Morton v. Califano*, 481 F.Supp. 908, 914 n. 2 (E.D. Tenn. 1978); 42 U.S.C. § 405(g). "[A]lthough summary judgment motions are customarily used [in social security cases], and even requested by the Court, such motions merely serve as vehicles for briefing the parties' positions, and are not a prerequisite to the Court's reaching a decision on the merits." *Kenny v. Heckler*, 577 F.Supp. 214, 216 (D.C. Ohio 1983).

III.  **MEDICAL EVIDENCE**

A.  ***Chronological Summary of Medical Records***

Plaintiff is a fifty-three year old Hispanic-American female with a family history of breast cancer, and is a chronic smoker. [AR 274].

In 2012, plaintiff was diagnosed with high blood pressure and later was hospitalized for a heart attack, for which she received an angioplasty and a stent. [AR 448]. She also had her gallbladder removed in August of 2012. [AR 449].

In August of 2014, a mammogram revealed breast cancer in plaintiff's right breast, for which she underwent radiation therapy from December 2014 through January 2015. [AR 273, 276]. The record does not indicate whether plaintiff underwent surgery to remove the cancer. She tolerated the radiation therapy with mild, acute side effects [AR 277], and a mammogram of both breasts in May, 2015 indicated a benign result. [AR 279].  During a September, 2014, checkup, plaintiff's EKG was within normal limits and indicated "good exercise capacity." [AR 272]. During an October, 2014 checkup, plaintiff indicated feeling more anxious than usual and smoking more. [AR 289].

Plaintiff indicated during an April, 2015 checkup that she was generally tolerating the prescribed medication Tamoxifen.[2] [AR 281]. However, she did express that she was experiencing hot flashes as a side effect. [*Id.*].

In May, 2015, plaintiff had a second heart attack [AR 1014], was diagnosed with "acute coronary syndrome," and had two stent placements. [AR 297].  The discharge report also indicated "breast cancer, coronary artery disease, and deep vein thrombosis in the past." [*Id.*].  Plaintiff was noted to be noncompliant in taking Plavix because she was "very preoccupied and depressed related to her breast cancer diagnosis." [*Id.*].  Her doctor indicated that she suffered from a "significant amount of anxiety and depression." [AR

---

[2] Tamoxifen is commonly used to treat breast cancer and used to decrease the chance of breast cancer recurrence in women who have received treatment for the disease. *Tamoxifen in Pill Form (Brand Name: Nolvadex)*, Breastcancer.org (March 30, 2018), http://www.breastcancer.org/treatment/hormonal/serms/tamoxifen.

4

304]. In May, 2015, plaintiff also had a positive stress test prompting a cardiac catheterization that proceeded without complications. [AR 297].

A June 2015 "Behavioral Health Adult Intake Assessment" indicated plaintiff was depressed after the death of a close relative, but was feeling better and optimistic about her recovery from cancer and her heart condition. [AR 398]. She did not report any signs or symptoms requiring any clinical attention, and otherwise had a healthy evaluation. [AR 388-399].

Plaintiff stopped taking her prescribed Tamoxifen due to abnormal uterine bleeding according to a December, 2015 medical appointment report. [AR 428]. She also relayed having severe hot flashes and night sweats around the same time. [AR 430]. Although scheduled for a uterine biopsy, the medical report indicated she could not tolerate the procedure due to an anxiety attack. [AR 432].

In November, 2015, plaintiff underwent a pelvic ultrasound. [AR 435]. The ultrasound identified "small cystic structures in the endometrium." [AR 435-36]. A medical consultation in January of 2016 noted that there were no masses present. [AR 452]. Further, a pathology report in February of 2016 indicated "mainly mucus and minute strips of benign endometrial surface epithelium, [and] no evidence of hyperplasia or malignancy in the submitted sample." [AR 762].

In February of 2016, plaintiff was evaluated for complaints of chest plain. [AR 778]. She was diagnosed with chest pressure, hypertension, shortness of breath, and dizziness, and referred for a stress test. [AR 778-79]. The March 2016 stress test indicated a "resting left ventricular ejection fraction" of 74%, which is within the normal range. [AR 522]. In April of 2016, plaintiff had a normal echocardiogram, indicating systolic function with ejection fraction of 57%, which was within the normal range. [AR 1013-14].

Plaintiff had a breast cancer follow-up in April, 2016. [AR 480]. She had a negative endometrial biopsy, despite an episode of vaginal bleeding. [*Id*.]. She was placed back on Tamoxifen, and although she had stopped taking her antidepressant medications, she

denied any depressive or suicidal thoughts. [*Id*.].  Further, she planned to undergo a hysterectomy to treat her diagnosed uterine fibroids. [*Id*.].

In July of 2016, plaintiff reported having hot flashes. [AR 1247].  That same month, plaintiff was instructed to stop taking Tamoxifen and take Anstrasol in its place. [AR 1249].

During a December 2016 physical exam, plaintiff reported mild shortness of breath. [AR 1385]. She was cooperative, but anxious. [*Id*.]. The discharge records indicated panic attacks, pain without a known cause, nonspecific chest pain, and generalized anxiety. [AR 1388].

At a January, 2017 physical exam, plaintiff reported vision issues and was referred to an optometrist. [AR 1137]. All other results were normal and her existing medical conditions were stable. [AR 1138].

In February, 2017, plaintiff had a checkup before a cataract removal surgery. [AR 1033]. She complained of hot flashes at that time. [AR 1157].  The Administrative Record reveals plaintiff was scheduled to undergo the planned hysterectomy in March, 2017. [*Id*.]. However, there is no information in the record indicating whether plaintiff underwent the surgery. Plaintiff underwent cataract surgery on May 4, 2017. [AR 1465].

Plaintiff was referred for right hand/bilateral "trigger fingers"[3] in May of 2017. [AR 1480].

### B.   *Findings of Medical Experts*

The ALJ determined that the medical evidence showed plaintiff was able to perform a range of light work (despite her physical conditions), with limitations. [AR 871; 1064]. The limitations included: "[plaintiff] could life and/or carry, push and/or pull, 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand and/or walk for six hours in an 8-hour workday; occasionally climb ramps, stairs, ladders, ropes,

---

[3] A condition where finger is stuck in a bent position. *Trigger Finger*, American Society for Surgery of the Hand (2015), http://www.assh.org/handcare/hand-arm-conditions/trigger-finger.

and/or scaffolds; and frequently perform all other postural activity, including balancing, stooping, kneeling, crouching, and crawling." [AR 26]. This was confirmed by State agency reviewers upon their evaluation of the record. [AR 86-91; 103-08]. The ALJ further determined that "the treatment records supported that [the plaintiff] was also limited to frequent use of the right upper extremity for manipulation [*sic*] and feeling; standing and/or walking for 20 minutes, at a time, and for 5.5 hours; and lift and/or carry, push and/or pull, 10 pounds occasionally and 10 frequently with the right upper extremity." [AR 26]. Reading the ALJ's opinion in context, it is apparent that the ALJ identified substantial physical limits on plaintiff's ability to use her right arm and hand. [4]

A consultative examiner found, upon an independent review, that plaintiff was capable of a full range of light work capacity. [AR 452]. However, the ALJ concluded, contrary to the consultative examiner's findings, that the overall medical evidence "support[ed] that the [plaintiff] [had] limitations with postural activity, along with additional limitations in lifting and/or carrying with the right upper extremity." [AR 26].

Another consultative examiner, a licensed psychologist, evaluated the claim and determined that plaintiff had either no, or mild, mental limitations. [AR 456-60]. The ALJ concluded that these findings were "fully consistent with the evidence of the record, and [were] afforded great weight." [AR 27].

Furthermore, a medical expert at the oral hearing testified that plaintiff's medical conditions did not meet or equal any medical listing, and that she was not disabled because she was capable of a range of *medium* work. [AR 42-54]. Despite the medical expert's testimony, the ALJ concluded that the objective record supported a more restrictive residual functional capacity. [AR 27].

/ / /

---

[4] The ALJ's wording in the direct quote appears to incorrectly imply that plaintiff was required to use her right side due to limitations with her left side, and that, by implication, her right side was the stronger. Yet plaintiff actually experienced substantial difficulty with her right side, which is reflected accurately in the ALJ's opinion when read fully and in context.

## C. *Plaintiff's Oral Testimony*

Plaintiff testified at her oral hearing that she could not work because of "really bad hot flashes" and "dizzy spells." [AR 58]. She would easily become short of breath, requiring short and frequent breaks. [*Id.*]. When walking, she experienced fatigue and shortness of breath. [*Id.*]. Indeed, she stated that she could not walk more than two blocks without sitting down to catch her breath. [*Id.*]. Further, her chest pain was triggered by walking. [AR 63]. [*Id.*]. Standing up too quickly was also a problem, and she struggled to use a computer due to vision issues. [*Id.*; AR 68].

Plaintiff testified she could perform simple household tasks and chores (e.g., cooking a meal, errands for groceries, minor housecleaning), [AR 59]. She also explained that she was weaker on her right side, and thus could not carry common items in her right hand (e.g., her purse or groceries). [*Id.*]. Aside from the general weakness, plaintiff complained of particular difficulty and pain in her right hand ring finger. [AR 66]. Pain and numbness was a daily struggle, rendering her unable to carry items of roughly twenty pounds without both hands. [AR 60, 69]. She stated she was likely unable to carry that much weight for two cumulative hours a day in a typical forty hour work week. [AR 63]. She also testified that she could not be on her feet for more than twenty minutes at a time, unless she was leaning on something [*Id.*]. Yet at other times in her testimony she indicated she stood for approximately two-thirds of the day on most days. [AR 61]. When pressed by the ALJ, plaintiff testified that she believed she would be unable to stand for six hours a day in an eight-hour workday, but that five and a half hours would be more realistic. [AR 62].

Finally plaintiff testified that she frequently went to the hospital due to anxiety attacks. [AR 64].

/ / /

/ / /

/ / /

/ / /

## IV. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

To qualify for disability benefits under the SSA, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least twelve months. 42 U.S.C. § 423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d at 1193-94.

At step one, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Here, the ALJ concluded plaintiff had not engaged in substantial gainful activity since July 22, 2015, the amended alleged onset date of plaintiff's impairments. [AR 21].

At step two, the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). For example, a slight abnormality or combination of slight abnormalities that only have a minimal effect on the applicant's ability to perform basic work activities will not be considered a "severe" impairment. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Examples of basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual workers and usual work situations, and dealing with changes in routine work setting. 20 C.F.R. § 404.1521(b)(1)-(6). "If the ALJ finds that the claimant lacks a medically severe impairment, the ALJ must find the claimant not to be disabled." *Barnhart*, 433 F.3d at 686.

Here, at step two, the ALJ concluded that plaintiff has the following severe impairments: "history of breast cancer; metabolic syndrome with [coronary artery disease];

overweight/obesity; atypical chest pain; uterine tumor; neuropathy; and degenerative joint disease." [AR 21].

If a claimant is deemed to have severe impairments, the ALJ then determines at step three whether any impairment equals, or rises to the level of, one of the "Listing of Impairments" in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, he or she must be found disabled. [*Id.*]. Here, the ALJ found at step three that plaintiff's impairment or combination of impairments did not meet or equal a listed impairment. [AR 22]. This included those found under medical 1.02 (major dysfunction of a joint(s) due to any cause); 4.00 (cardiovascular system); 11.00 (neurological disorders); and 14.00 (immune system disorders). [AR 22]. The ALJ based this determination on recorded findings of treating or examining physicians and the evidence of medical findings. [AR 22].

If an impairment does not meet or equal a "Listing of Impairments", the ALJ must make a step four determination of the claimant's residual functional capacity based on all impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2). "Residual functional capacity" ("RFC") is "the most [an applicant] can still do despite [his or her] limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ must determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

If the applicant cannot perform past relevant work, the ALJ – at step five – must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the Agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). The ALJ must consider all of plaintiff's medically determinable impairments, including any pain that could "cause a limitation of function" and any impairments that are not "severe," and then determine plaintiff's residual functional capacity to perform work in the national economy. 20 C.F.R. §§ 404.1520; 404.1545; 416.929. "In determining [the claimant's] residual functional capacity, the ALJ

must consider whether the aggregate of [the claimant's] mental and physical impairments may so incapacitate him that he is unable to perform available work." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997), as *amended on reh'g* (Sept. 17, 1997). As noted above, "residual functional capacity" is "the most [an applicant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

Considering the totality of plaintiff's impairments, the ALJ concluded that plaintiff has the residual functional capacity to "perform light work as defined in 20 CFR 416.967(b)," with six exceptions. [AR 23]. Plaintiff's statements concerning "the intensity, persistence, and limiting effects of [her] symptoms," the ALJ concluded, were "not entirely consistent with the medical evidence and other evidence in the record." [AR 24]. The ALJ noted plaintiff participated in activities that undermined her allegations of disabling functional limitations. [AR 23-24]. Specifically, that "she was able to keep up with general cleaning at home; she could shop for necessities; she could sweep for about 15 to 20 minutes; she could prepare simple meals like hamburger helper; and she was able to go to her sister's house . . . ." [*Id.*].

The ALJ gave great weight to the medical evidence in making his determination. [AR 24]. He also gave weight to the findings of the two agency reviewers, the two consultative examiners, and the medical expert. [AR 26]. He concluded that the "significant light range of light residual functional capacity [was] supported by the testimony of claimant; the claimant's disability reports; the third party function report; and the claimant's treatment records" and that "the less than light limitation addresses the claimant's impairments and subjective complaints." [AR 27].

While plaintiff was unable to perform any past relevant work, "considering the claimant's age, education, work experience, and residual functional capacity" the ALJ concluded that there existed jobs in significant numbers in the national economy that the plaintiff could perform. [AR 27-28]. Specifically, plaintiff could, according to the testimony of the vocational expert, "perform the requirements of representative light occupations such as sub-assembler," with 26,000 positions in the national economy;

"information clerk," with 60,000 positions in the national economy; and "hand packager," with 96,000 positions in the national economy. [AR 28]. From this testimony, the ALJ concluded, that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and that a finding of "not disabled" was warranted under Section 1614(a)(3)(A) of the Social Security Act. [AR 28]. Accordingly, plaintiff was denied benefits. [AR 28].

## V. **DISCUSSION**

As noted above, the final decision of the Commissioner must be affirmed if it is supported by substantial evidence and if the Commissioner has applied the correct legal standards. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. *Id.* If there is evidence in the record to support more than one rational interpretation, the District Court must defer to the Commissioner's decision. *Id.* Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). A court must weigh both the evidence that supports and detracts from the administrative ruling. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

Plaintiff contends the ALJ erred by not properly considering plaintiff's subjective testimony about "the intensity, persistence, and limiting effects of her symptoms 'not entirely consistent with the medical evidence and other evidence'" in making his final determination. [Doc. No. 17, at p. 5] (quoting AR 24). Specifically, plaintiff asserts:

1. The ALJ failed to cite either specific testimony or cite specific reasons for discounting plaintiff's testimony [*Id.*, at p. 7];

2. The ALJ improperly relied on medical evidence in support of his findings [*Id.,* at p. 9];

3. The ALJ improperly considered plaintiff's activities of daily living in discounting her pain testimony [*Id.*, at pp. 6-7]; and

1    4.  The ALJ improperly considered plaintiff's failure to take a prescribed medication
2        [Doc. No. 19, at p. 3].

3    Thus, according to plaintiff, "the final decision of the ALJ lacks the support of substantial
4    evidence and rests on legal error." [Doc. No. 17, at p. 10]. Therefore, she asserts that the
5    ALJ's decision should be reversed and remanded for payment of benefits, or, in the
6    alternative, remanded to reconsider her subjective pain and symptom testimony. [*Id.*].

7        The Commissioner argues that the ALJ properly considered plaintiff's testimony,
8    but that such testimony was not reliable because: (1) the objective medical evidence
9    undermined her testimony; (2) plaintiff's activities were inconsistent with disability; (3)
10   there was evidence that plaintiff was not compliant with her treatment; and (4) plaintiff's
11   testimony conflicted with examining and reviewing physicians. [Doc. No. 15, at p. 3, 5-
12   6]. Thus, the Commissioner asserts, the ALJ "provided numerous, valid reasons for
13   discounting [p]laintiff's subjective complaints," and the decision is therefore supported by
14   substantial evidence and without legal error. [*Id.*, at p. 7].

15   *A.  **Whether the ALJ failed to cite specific reasons for discounting plaintiff's**
16   **testimony***

17       Turning to plaintiff's first argument, the Ninth Circuit sets out a two-step analysis
18   for evaluating pain. *Vasquez v. Astrue*, 572 F.3d 586 (9th Cir. 2009). First, the claimant
19   must provide objective medical evidence of an underlying impairment which could
20   reasonably be expected to produce the pain. *Id*. at 591. The claimant need not show that
21   her impairment could be expected to cause the severity of the pain she claims, only that it
22   could cause some degree of pain. *Id*. Here, the ALJ found that the medical evidence
23   supported a finding of an underlying impairment that could be reasonably expected to cause
24   her alleged pain. [AR 24].

25       Once, as here, the first prong is met without evidence of malingering, the claimant's
26   testimony regarding the degree of her pain may be rejected only for clear and convincing
27   reasons. *Vasquez*, 572 F.3d at 592. The ALJ must specify which testimony he finds not
28

credible, and failure to do so is legal error. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).[5]

Here, the ALJ found no evidence of malingering in the record. Plaintiff's testimony, therefore, could only be properly rejected if there were explicitly stated clear and convincing reasons for doing so. The relevant issues thus presented to the Court are (1) whether the ALJ clearly identified the testimony he found not to be credible; and, (2) whether the ALJ provided clear and convincing reasons for rejecting plaintiff's subjective pain testimony. Each issue, and the accompanying arguments, is addressed in Section 1 below.

In support of his decision, the ALJ rejected plaintiff's testimony because "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." [AR 24]. The ALJ also considered plaintiff's testimony regarding her daily activities and her discontinuing use of Plavix in making his credibility determination. [AR 23-24; 26].

As stated, *supra*, plaintiff argues that the ALJ failed to cite either specific testimony or cite specific reasons for discounting plaintiff's testimony.

When rejecting pain and symptom testimony, an ALJ may not do so by making general findings; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Colvin*, 806 F.3d at 493. Upon review, an ALJ's decision cannot merely conclude the claimant was not credible and summarize the medical evidence supporting his determination. *Id.* The *specific* reasons must be readily

---

[5] The Commissioner disputes this standard of review. The Commissioner states that it is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g), and with agency regulations and rulings specifying the rationale its adjudicators should provide in support of their findings. However, the Ninth Circuit has rejected this argument in *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014) (holding that the "clear and convincing" requirement actually predated *Burrell* and was not "excised" by it). *Burrell* therefore forecloses the Commissioner's argument.

identifiable by a reviewing court to ensure that the claimant's testimony was not arbitrarily discredited. *Id.* The clear and convincing standard is "the most demanding required in Social Security Cases." *Moore v. Commissioner of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2009). The ALJ's findings must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not "arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ met this burden.

The ALJ noted in his decision that, at the hearing, plaintiff "asserted that she became fatigued with walking; she had really bad hot flashes and dizzy spells; she had exhaustion; she had anxiety; and she had numbness and pain." [AR 23]. In discounting the testimony, the ALJ explained that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision" [AR 24], and "the consistency of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The positive objective clinical and diagnostic findings since the alleged onset date detailed above do not support more restrictive functional limitations than those assessed herein." [AR 26]. The ALJ then proceeded to provide a detailed, three-page analysis of the medical evidence that undermined plaintiff's specifically identified pain and symptom testimony. [AR 24-27]. This included a detailed description of the relevant chronological medical history, a review of the findings of state agency reviewers, a review of two consultative examiners, and a careful parsing of the oral testimony provided by a medical expert. [AR 26-27]. Based on these findings, the ALJ concluded that the plaintiff's testimony was not credible as it related to her subjective pain and symptoms. [AR 24].

After identifying the specific evidence undermining plaintiff's pain and symptom testimony, the ALJ continued, "despite [plaintiff's] allegations of disability, the claimant acknowledged that she was able to keep up with general cleaning at home; she could shop

for necessities; she could sweep for about 15 to 20 minutes; she could prepare simple meals like hamburger helper; she was able to go to her sister's house." [AR 23-24].

Thus, as required, the ALJ specifically identified the statements he found not to be credible and the evidence that undermined them. *Colvin*, 806 F.3d at 493. The ALJ's specificity and analysis is consonant with the clear and convincing standard. Thus, the Court finds the ALJ met his burden.

### B. *Whether the ALJ improperly relied on medical evidence in support of his findings.*

The Court now turns to plaintiff's second argument that the ALJ improperly relied on medical evidence in support of his findings. [6]

In relying on medical evidence, an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. *Brown-Hunter*, 806 F.3d at 489. He must provide clear and convincing reasons, supported by the evidence in the record, to reject a claimant's testimony. *Id*. This standard is identical to that laid out

---

[6] Plaintiff also argues the ALJ improperly dismissed plaintiff's pain testimony and cites to *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996) and *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993) for support. Nothing in the ALJ's opinion is inconsistent with the rulings in either case. In *Smolen*, the Ninth Circuit explained that to satisfy requirements for presenting subjective symptom evidence, a claimant seeking disability benefits must only produce objective medical evidence of impairment or impairments, and that that impairment, or combination of impairments, could reasonably be expected to produce some degree of the symptoms. *Smolen*, 80 F.3d at 1281. A claimant need not produce objective medical evidence of pain or fatigue itself, or severity thereof, nor must a claimant produce objective medical evidence of a causal relationship between a medically determinable impairment and symptom. *Id*. And in *Dodrill*, the Ninth Circuit explained that ALJ must provide clear and convincing reasons for rejecting pain and symptom testimony, absent evidence of malingering. *Dodrill*, 12 F.3d at 918. Further, the ALJ must state which testimony is not credible and what evidence undermines it. *Id*. Here, the ALJ found that the medical evidence supported a finding of an underlying impairment that could be reasonably expected to cause her alleged symptoms. [AR 24]. This Court finds the ALJ did provide clear and convincing reasons for discounting the testimony, and pinpointed which testimony he found not credible and what evidence undermined it. Therefore plaintiff's argument is unavailing.

in Section A(1), *supra*.   The Court agrees with defendant that the ALJ properly relied on the opinions of physicians and properly cited to objective medical evidence.

Here, the ALJ did not simply recite the medical evidence in rejecting plaintiff's testimony; rather, he compared the medical evidence with the testimony, and gave reasons for rejecting the testimony in light of the inconsistent medical evidence. First, the ALJ found that plaintiff's subjective pain and symptom testimony was not credible because her testimony was not consistent with the medical and other evidence in the record. [AR 24]. The ALJ then found, after identifying the medical evidence that was inconsistent with plaintiff's testimony, that plaintiff's allegations of her symptoms were "greater than expected in light of the objective evidence of record. The positive objective clinical and diagnostic findings since the alleged onset date detailed above do not support more restrictive functional limitations than those assessed herein." [AR 26]. The Court finds the ALJ provided clear and convincing reasons for relying on the medical evidence to discount plaintiff's testimony.

## C. *Whether the ALJ improperly considered plaintiff's activities of daily living in discounting her pain testimony.*

Plaintiff also asserts, in her third argument, that the ALJ improperly considered her activities of daily living in discounting her pain testimony. In considering plaintiff's daily activity testimony, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 1016 (9th Cir. 2014). However:

> [w]hile a claimant need not 'vegetate in a dark room' in order to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981)), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are *transferable to a work setting*, *see Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999); *Fair*, 885 F.2d at 603. Even where those activities suggest some difficulty

functioning, they may be grounds for discrediting the claimant's testimony to the extent that they *contradict* claims of a totally debilitating impairment. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010); *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 693 (9th Cir. 2009).

*Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (emphasis added). Here, the ALJ specifically noted that plaintiff's testimony regarding her daily activities was inconsistent with disabling functional limitations, and thus contradicted her pain and symptom testimony. [AR 23-24]. Further, the ALJ concluded that such everyday activities "were the same as those needed to obtain and maintain employment." [AR 24]. The Ninth Circuit has provided that "[i]f, despite [her] claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002) (upholding ALJ's negative credibility determination where claimant's testimony was at odds with her ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping"). The Court finds the ALJ was justified in considering plaintiff's daily activity in discounting her pain testimony.

### D. <u>Whether the ALJ erred in considering plaintiff's failure to follow her prescribed course of treatment</u>

The Court addresses plaintiff's fourth and final argument, namely that the ALJ improperly considered plaintiff's failure to take a prescribed medication. Failure to follow a prescribed course of treatment may support a finding that the subjective pain complaint is unjustified or exaggerated. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). However, an ALJ may not rely on a failure to follow a prescribed course of treatment as a basis to discount a claimant's testimony if the claimant has a "good reason" for not doing so. *Fair*, 885 F.2d at 603. Plaintiff argues "her noncompliance with Plavix following the stent placement was due to Pena's preoccupation and depression related to her breast

18

cancer diagnosis . . ." and is, therefore, a "good reason" for discontinuing Plavix.[7] [Doc. No. 19, at p. 3]. The Court disagrees.

The Code of Federal Regulations provides an illustrative list of "good reasons" for not following a prescribed course of treatment:

(c) Acceptable reasons for failure to follow prescribed treatment. We will consider your physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have an acceptable reason for failure to follow prescribed treatment. The following are examples of a good reason for not following treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion;

(2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4) The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5) The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. § 404.1530(c). *See also Fair,* 885 F.2d at 603 ("While there are any number of good reasons for not doing so, *see,* e.g., 20 C.F.R. § 404.1530(c) . . . a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony"); *Gallant v. Heckler,* 753 F.2d

---

[7] As indicated on page 5, *supra,* plaintiff also discontinued the use of Tamoxifen due to abnormal uterine bleeding. However, neither plaintiff nor defendant brought up this point in their briefs, and the ALJ did not indicate in his decision that he considered plaintiff's discontinuance of Tamoxifen in making his determination to deny benefits.

1450, 1454 (9th Cir. 1984) (finding an ALJ improperly considered claimant's failure to take pain medication because claimant's doctor recommended claimant cease taking it).

Here, the list of adequate reasons above does not suggest preoccupation with a medical diagnosis is a reasonable basis for failure to follow prescribed treatment. Moreover, plaintiff was neither advised to stop taking Plavix by her doctor at that time, nor is it apparent from the record that she was motivated by physical or mental symptoms or side effects caused by the drug. The Court therefore finds that plaintiff did not have a sufficient basis for discontinuing Plavix, and the ALJ properly considered the discontinuance in his disability determination.

In sum, for the reasons stated above, the ALJ properly found plaintiff's subjective pain and symptom testimony less than fully credible because he provided specific, clear and convincing reasons supported by substantial evidence in making his determination.[8]

Accordingly, the Court **RECOMMENDS** that defendant's motion be **GRANTED** and plaintiff's motion be **DENIED.**

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[8] Plaintiff places reliance on Social Security Ruling 16-3-p, which requires an ALJ to articulate specific and legitimate reasons for rejecting pain and limitation testimony. As the ALJ provided clear and convincing reasons for the rejection, the Court finds the ALJ satisfied this Ruling.

## **CONCLUSION**

Based on the foregoing, **IT IS HEREBY RECOMMENDED THAT THE DISTRICT COURT**:

1. **GRANT** defendant's Cross-Motion for Summary Judgment [Doc. No. 14].

2. **DENY** plaintiff's Motion for Summary Judgment [Doc. No. 17].

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d). Within ***fourteen (14) days*** after being served with a copy of this Report and Recommendation, "any party may serve and file written objections." 28 U.S.C. § 636(b)(1)(B)&(C). The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within this specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: July 30, 2018

Hon. Karen S. Crawford
United States Magistrate Judge